## N. Y. COMMON PLEAS.

### J. & C. JOHNSTON, respondents, agt. JAMES N. ALLEN, appellant.

Where a man marries a woman, introduces her as his wife, and the two parties present to the world the outward evidences of cohabitation as husband and wife, the husband is estopped from denying the relation, so far as tradesmen are concerned, who deal with the wife and furnish her with necessaries on the husband's account.

It is irrelevant, in such a case, to prove that notwithstanding the second marriage, the wife had been in fact previously married to another man, which marriage had not been dissolved.

After marriage, whether lawful or not, as long as it exists, third persons without notice, who have dealt with the wife on the assumption that she was indeed such, based on the conduct of the husband, can recover for necessaries furnished her, if the husband fail to provide them.

It is no answer to such a demand that there is an action for divorce pending, unless alimony has been allowed.

*General Term, December,* 1869.

*Judges* DALY, BRADY *and* BARRETT.

THE plaintiffs were dry goods dealers in Broadway, city of New York. The defendant's wife, Julia, on the 24th March, 1865, called at their store and purchased a bill of goods, consisting of materials for her clothing. At the time of the purchase she represented that the defendant, her husband, had authorized her to call on the plaintiffs and to get the goods in question. In point of fact, on that day the defendant and his wife had been separated for over thirty days; occasioned, as the plaintiffs proved, by the defendant on one evening coming home drunk to her, in a respectable boarding-house where they both lived, and choking and beating her.

The plaintiffs did not know of their separation.

The defendant made no provision for his wife, and at the time of the purchase of the goods in question, the latter was

Johnston agt. Allen.

in necessitous circumstances and had not the means even to make up the goods purchased of the plaintiffs.

The defendant had, before the purchase, commenced a suit against his wife to dissolve the marriage with her, on the ground of her prior marriage. In that suit no alimony had been allowed up to the time of the purchase of the said goods.

The plaintiffs proved the above facts, and also introduced proof tending to show that the goods in question were suitable to the condition in life of the defendant; and that the defendant and the said Julia had been married several years before this occurrence by a clergyman of the Methodist denomination.

On the trial, the defendant offered to prove that in point of fact, at the time he was married to her, she was already the wife of another man who was then living.

To this testimony the plaintiffs objected. The court excluded it; exception by defense. Verdict for plaintiffs for full amount, On appeal, the general term of the marine court affirmed the judgment.

The defendant appealed to the common pleas.

E. P. Cowles, *for appellant.*

I.—The wife by law is invested with authority, as the agent of the husband, to make purchases of necessary articles of personal and family supplies, either,

1st. Where the two are clearly living together as husband and wife, and the husband has imposed no restriction upon her power to make necessary family purchases, or,

2d. Where, by his own cruel treatment, the wife as a matter of personal safety, has been compelled to leave her husband's bed and board, and he makes no provision for her maintenance and support. (*Blowers* agt. *Sturtevant,* 4 *Denio,* 46 ; *Weller* agt. *Phillips,* 40 *Barb.,* 390.)

II. At the time of the purchase of these goods, Mr. and

Mrs. Allen were living apart; she had left him, and two suits were pending between them. To sustain the judgment below it must appear then,

1st. That she was the defendant's wife.

2d. That in consequence of cruelty, she had been forced to leave his bed and board, and live apart from him. Such cruelty must be such as would justify the court in granting a limited divorce.

3d. That he made no provision for her support.

4th. That the goods sold were necessaries.

III. The court below erroneously excluded the proof offered by the defendant, that Mrs. Allen had been previously married to one Terrell, who was still living. This showed that her pretended marriage to the defendant was absolutely void. (*Vide* 2 *R. S.*, 1st ed., 138, § 1; *Id.*, 139, § 4; *Cropsey* agt. *Ogden*, 1 *Kern.*, 228.)

If Mrs. Allen was not the wife of the defendant, the law does not imply any agency on her part to purchase in the defendant's name, as a lawful wife, may do in her husband's name.

This agency which the law creates, is for the benefit of the innocent wife, to enable her in her distress, while unsupported by her husband, to command the means of living. It is not implied for the benefit of the paramour or adulterous mistress; and, therefore, if this woman was Mrs. Terrell, not Mrs. Allen, the law did not clothe her with implied power to sustain herself by falsely vouching her pretended husband. Such marriage being *absolutely void*, would carry with it none of those powers or incidents, privileges or rights, with which lawful marriage invests the lawful wife. The question here is, had Mrs. Allen lawful power as a lawful wife, to assume an agency? And upon that point, the question whether she had been legally married or not, was the first vital question in the case.

IV. But, assuming that this woman was the defendant's wife, the proofs do not sustain the verdict.

The counsel here discussed the evidence, and maintained that nothing was proven which could jusify the wife in separating from her husband. The very reverse was established by the proofs. Again, the articles sold were not necessaries.

Upon these points the burden of proof is with the tradesmen.

DENNIS McMAHON, *for respondent.*

*First.* The court very properly rejected the evidence offered by the appellant below, about the prior marriage of the defendant's wife.

*(a.)* Conceding the facts offered to be proved by the defendant, yet it being admitted that the defendant had lawfully married the said Julia Ann, and cohabited with her, and held her out to the world as his wife, he could not be permitted to be relieved from his said marriage, or the consequences of his previous conduct about her, or his obligations to support her until the so-called second marriage had been legally dissolved by a competent court; and until such dissolution, the wife was entitled to be supported and clothed, suitable to her and his condition in life and society.

*(b.)* 2 Revised Statutes, 142 *(o. p.,)* section 27 (20,) provides a jurisdiction in the supreme court, to annul the marriage contract, for either of certain specified causes, one of these causes is,

That the former husband or wife of one of the parties was living; and that the marriage with such former husband or wife was then in force.

Section 26 (21,) provides that where a marriage is sought to be canceled, on the ground that a former husband or wife of the parties was living, it may be declared void, on the application of either of the parties during the life-time of the other, or upon the application of such former husband

or wife.   This section 21, Judge SUTHERLAND in *Cropsey* agt. *McKenney*, (30 *Barb.*, 47,) holds, prevents the second marriage from being attacked collaterally in actions instituted by creditors.   *(See opinion, 54–5.)*

Section 28 (23,) provides, when it shall appear and be so decreed that such subsequent marriage was contracted in good faith and with the full belief of the parties, that the former husband or wife was dead, the issue of such marriage born or begotten before its nullity shall be declared, shall be entitled to succeed in the same manner as legitimate children to the real and personal estate of the parent, who at the time of the marriage was competent to contract, and the issue so entitled shall be specified in she sentence of nullity.

These provisions establish incontestibly that the mere fact, that a prior marriage exists, does not relieve the second husband from bigamy, if he takes it into his head to marry a second wife until his prior marriage is judicially dissolved. Until that takes place the wife is entitled to support and her clothing. . The evidence offered was, therefore, irrelevant and incompetent.

The defendant's counsel did not couple with his offer any fact which would amount to a defense or tend to prove a defense.   He should have offered to prove that he was ignorant of the first marriage when he married Mrs. Allen. ( *See Valleau* agt. *Valleau*, 6 *Paige* 207.)

*Second.* The court properly overruled the objection taken to the evidence, as to the conduct of the defendant in holding out said woman to be his wife; also at that time, she knew her first husband was alive, nor did he offer to show that she had not been divorced from her husband.   It was properly admissible for the purpose of proving the conduct of the defendant, in holding out to the world and especially to the plaintiffs, this woman as his wife, and entitled to credit as such.

*Third.* The finding of the jury below was conclusive on,

*1st.* The cause that the wife had for leaving her husband.

*2d.* That the goods in question were necessaries.

*Lastly.* The circumstances under which the plaintiffs were deprived of their goods, taken in consideration with the holding out to the world by the defendant of his wife as entitled to credit, estopped him from endeavoring to shield himself from liability on the grounds alleged.

*By the court,* BRADY, J.—The plaintiffs in this case sold to the defendant's acknowledged wife some articles which the jury decided to be necessaries upon evidence which was conflicting. At the time of the sale the defendant and his wife were living separate and apart, and had commenced action each against the other for a divorce; but no alimony had been allowed in either of the cases, and the defendant had not contributed towards his wife's support or made any provision for her after their separation. The separation was induced by alleged cruel treatment on the part of the defendant towards her, which rendered it unsafe for her longer to cohabit with him. The jury, after hearing the evidence upon that subject, found for the plaintiffs, and by their verdict declared that it was sufficient to justify the defendant's wife abandoning him from apprehension of personal injury. These findings are conclusive upon the defendant. They relate to questions of fact exclusively, and cannot for that reason be disturbed. The defendant, nevertheless, relies upon the averred fact that when he married, his wife had a husband living from whom she had not been divorced, and who was, at the time of the trial of this action in the court below, still in existence. An offer to prove the fact was made and rejected, and that incident of the trial formed an important part of the appeal taken to this court. After a careful and thorough examination of the questions which were in that way presented, it is deemed unnecessary to decide them, inasmuch as there is a rule of law applicable to that branch of this case which settles the

liability of the defendant. He was married to the person whom he now disclaims, by a proper legal formula. He cohabited with her and introduced her as his wife, as well to others as to the plaintiffs in this action, or one of them. Having done so, they were justified in dealing with her as occupying that relation to him, and he is estopped from denying it so far as they are concerned. (*Mace* agt. *Cadell*, *Cowper*, 233; *Robinson* agt. *Nahon*, 1 *Camp.*, 245.) Upon the strength of his acknowledgment they dealt with her. They did so at their peril, it is true, but only upon the questions whether the defendant provided for her, and the articles sold were proper and necessary articles, considering the wealth of the husband and the position he occupied in the community. Having arrived at this conclusion, the whose scope of the defense, except such as related to the questions passed upon by the jury, as already stated, became wholly irrelevant.

It is said in *Story on Contracts*, that so strong is the presumption of the assent of the husband to the wife's contract, created by cohabitation, that it has been decided that if a man cohabit with a woman, holding her out to be his wife, he is liable for goods furnished to her during their cohabitation, by a tradesman who *who knew that they were not married*. A *fortiori* this would be the case if the tradesman supposed them to be married. *Story on Contracts, section* 101. The same rule is declared in *Comyn on Contracts, Vol.,* 1 214; *Watson* agt. *Threlkeld,* 2 *Esp. Rep.,* 637; *Hudson* agt. *Brent, N. P., Espinass,* 124; *Carr* agt. *King,* 12 *Mod.,* 372; *Vin. Abr. tit., Baron & Feme, D. b. pl.,* 38; *Robinson* agt. *Nahon,* 1 *Camp.,* 245; *Munro* agt. *De Chemant,* 4 *Camp.,* 215.) The defendant was, however, as we have seen, married, and by commencing his action for a divorce, affirmed his marriage, although he declared it to be illegal in consequence of the existence of the husband of the woman to whom he was married. It is not necessary to suggest the circumstances which might

Johnston agt. Allen.

have made that marriage legal, at least until declared to be otherwise by a court of competent jurisdiction. It is enough, as already suggested, for the plaintiff's case, that the defendant was in fact married to her, and had held her out to be his wife, as she was indeed, so far as the proper form of the union could make her such. If he was unfortunate he must bear the burden. It cannot be shared by persons whose confidence in his representations induced them to part with their property to her. Whatever may be the rules of law which govern controversies between themselves, third persons dealing with the wife on the strength of her conjugal rights, cannot be confronted with the illegality of the marriage, which has in fact been declared valid, and acted upon by the assumed husband and wife. Where there has been a marriage in fact, the case is stronger than where none was celebrated, unless the tradesman has been advised of the separation of the parties and the alleged ilegality of the marriage. The plaintiffs knew nothing of these facts, and were not chargeable with notice from any fact that appears in this case. It is true that where no marriage has in fact taken place, the separation of the parties relieves the husband, so-called, from liability for goods sold after that incident, as suggested in *Munro* agt. *De Chemant*, by Lord ELLENBOROUGH; but that rule has no application to this case, inasmuch as there had been a marriage. I do not either subscribe to the suggestion as sound in principle in the absence of notice of the actual relation existing to a person who has been allowed to deal with a woman as a wife, or was allowed to so regard her by her so-called husband. Indeed, in *Robinson* agt. *Nahon*, *supra*, the defendant proved that he had a former wife living, and with whom he had resided since the marriage, when he married the woman, who was supplied with apartments by the plaintiff. But Lord ELLENBOROUGH said that there was no evidence to fix the plaintiff with a knowledge of the celebration of the first

marriage, and that the defendant was estopped to set up bigamy as a bar to the action. He had given the woman who lodged with the plaintiff every appearance of being his wife. It is unnecessary, however, to pursue the subject further. It is clear from these authorities that after marriage, whether lawful or not, as long as it exists, third persons without notice, who have dealt with the wife on the assumption that she was indeed such and which assumption was based upon the representation of the husband himself, can recover for necessaries furnished her if the husband fail to provide them. It is no answer to the demand thus made, that there is an action for divorce pending, unless alimony has been allowed. ( *Sykes* agt. *Halstead,* 1 *Sand. S. C.,* 483; *Bishop on Marriage and Divorce, Vol.* 1 *section* 401.) The judgment should be affirmed.